# ERNST AND MATTISON
A Law Corporation

Don A. Ernst
Raymond E. Mattison

Founded 1980

1020 Palm Street
P. O. Box 1327
San Luis Obispo, CA 93406
Tel: (805) 541-0300
Fax: (805) 541-5168

Christopher J. Edgington
Nigel A. Whitehead
Terry J. Kilpatrick

February 10, 2010

Honorable David G. Trager
United States District Court
225 Cadman Plaza East
Brooklyn, NY 11201

re:    *Lonberg v. City of Riverside*
       C.D. Cal. Case No.: ED-CV-97-0237 DGT(AJWx)

Dear Judge Trager:

As you requested, I am writing to respond to the following three questions you posed to each of the parties in this case: (1) What is Phase III of the trial about? (2) What law requires that sidewalks built before 1992 be accessible to people with disabilities? and (3) What did the prior judges assigned to this case say about Phase III? I will also provide a brief explanation why Phase I and Phase III are completely separate and that there is no good cause to delay the trial of Phase III. For these reasons Plaintiff requests that this case be set for trial in late Spring or early Summer 2010.

1.     **Scope of Phase III.**

       This case has been broken into three phases. In Phase I Judge Robert J. Timlin ordered the City of Riverside to prepare a transition plan identifying the access barriers on the City's sidewalks. That order was recently overturned by the Ninth Circuit Court of Appeals, which held that John Lonberg did not have standing to enforce the ADA regulation requiring transition plans. (*Lonberg v. City of Riverside*, 571 F.3d 846 (9th Cir. 2009).) In Phase II, Judge Stephen G. Larson ordered the City to fix 189 different curb ramps and driveways that did not comply with the ADA new construction guidelines for disabled access. (See 28 C.F.R. § 35.151.) Judge Larson also awarded Mr. Lonberg $221,000 in statutory damages. The purpose of Phase III is to determine whether the City's sidewalks, when viewed in their entirety, are accessible to and usable by persons with disabilities. (See 28 C.F.R. §35.150.) While generally Phase III will involve sidewalks and curb ramps constructed prior to 1992, the statute and regulations are not limited based on the date of construction. Instead, the ADA simply requires that the City's

sidewalks, when viewed in their entirety, be readily accessible to and usable by persons with disabilities. (28 C.F.R. § 35.150(a).) Mr. Lonberg will be seeking injunctive relief ordering that the City identify and remove barriers to access on the City's sidewalks and that he be awarded statutory damages based on California's civil rights laws.

**2.      Laws That Require Sidewalks To Be Accessible To The Disabled.**

The ADA, the ADA regulations, and case law interpreting the laws and regulations state that public entities have a duty to make their sidewalks accessible to and usable by persons with disabilities. In short, the basis for Plaintiff's as it relates to Phase III is as follows:

(a)     The Americans with Disabilities Act ("ADA") at 42 U.S.C. section 12132 states: "no qualified person with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

(b)     The ADA Regulations, at 28 C.F.R. section 35.150(a) state: "A public entity shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities."

(c)     In *Barden v. City of Sacramento*, 292 F.3d 1073, 1077 (9th Cir. 2002): the 9th Circuit Court of Appeal held that sidewalks are a program within the meaning of the ADA:

> Requiring the City to maintain its sidewalks so that they are accessible to individuals with disabilities is consistent with the tenor of § 35.150, which requires the provision of curb ramps. . . . Section 35.150's requirement of curb ramps in all pedestrian walkways reveals a general concern for the accessibility of public sidewalks, as well as a recognition that sidewalks fall within the ADA's coverage, and would be meaningless if the sidewalks between the curb ramps were inaccessible. See also, *Kinney v. Yerusalim*, 9 F.3d. 1067, 1071 (3rd Cir. 1993) quoting the Legislative history of the ADA at H.R.Rep. No. 101-485, pt. 2, at 84 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 367 ["The employment, transportation, and public accommodation sections of this Act would be meaningless if people who use wheelchairs were not afforded the opportunity to travel on and between the streets."].

(d)     In *Lonberg v. City of Riverside* 571 F.3d 846 (9th Cir. 2009) the Ninth Circuit Court of Appeals explained that the purpose of the ADA is to provide meaningful access to government programs, including sidewalks:

The plain language of § 202 [42 U.S.C. § 12132] prohibits public entities from discriminating against qualified disabled individuals in its administration of services and programs. This prohibition against discrimination is universally understood as a requirement to provide "meaningful access." *See e.g. Mark H. v. Lemahieu,* 513 F.3d 933, 937 (9th Cir. 2008) (noting the ADA requires reasonable modifications necessary to ensure meaningful access) [ ] *Ability Center*, 385 F.3d at 913: (noting Title II's express aim of providing meaningful access by requiring public entities to alter city streets and sidewalks); *Chaffin* 348 F.3d at 857 (noting its prior holding that "the ADA requires public entities to provide disabled individuals 'meaningful access'.")

. . .

This holding does not . . . prevent Lonberg from pursuing his pending claims for damages and injunctive relief raised in the other phases of this litigation. Indeed, to the extent the City is in violation of the ADA and its attendant regulations, <u>Lonberg's true remedy would lie in an injunction requiring the actual removal of barriers that prevent meaningful access.</u>

(*Lonberg v. City of Riverside*, 571 F.3d at 851-852 (emphasis added).)

(e) *Parker v. Universidad de Puerto Rico*, 225 F.3d 1,6 (1st Cir. 2000): "If 'structural changes' are necessary to achieve compliance [with Title II of the ADA], the regulations provide that 'such changes shall be made within three years of January 26, 1992,' 28 C.F.R. § 35.150(c)."

(f) *Culvahouse v. City of LaPorte*, ___ F.Supp.2d ___ 2009, WL 5215367 (N.D. Ind. 2009). The ADA requires public entities to make and maintain their sidewalks to be readily accessible to and usable by persons with disabilities.

### 3. Prior District Court Opinions Relevant To Phase III.

The case was first bifurcated by Judge Robert Timlin on January 23, 2001 when he converted Plaintiff's Motion for a Preliminary Injunction Requesting the City to Prepare a Transition Plan into a trial. Judge Timlin limited the scope of the first trial to the enforcement of the transition plan requirement, but Plaintiff does not recall the Court saying anything about the timing of the rest of the case.

The case was split again at a pre-trial conference hearing on January 8, 2007. At that hearing, Judge Stephen G. Larson confirmed the trial date for Phase II and stayed Phase III pending the resolution of the City's appeal of Phase I. Judge Larson adopted the City's argument

if the Ninth Circuit found that the City had an adequate transition plan that it might provide a defense to Plaintiff's Phase III claims. (Exh. A, p. 23, line 20 through p. 25, line 5.) The Court's conclusion, however, was based on the mistaken premise about the scope of the Phase I appeal. The only issue appeal is whether John Lonberg has standing to enforce the ADA transition plan regulation. I urge the Court to review the Ninth Circuit decision and pages 11-20 of the City's appellate brief (Exh B, p. 11-20) and you will find that the adequacy of the transition plan is <u>not</u> an issue on appeal. While regrettably Judge Larson seemed to have accepted the City's argument in 2007, that was before the Ninth Circuit issued its opinion. It is now clear that the adequacy of the transition plan was not an issue on appeal and will not be an issue before the U.S. Supreme Court. Thus, regardless what happens at the U.S. Supreme Court a trial on Phase III will be required. Put another way, either the Ninth Circuit decision will stand or the Supreme Court will reverse the Ninth Circuit and uphold the original injunction ordering the City to prepare a transition plan. In either case, Mr. Lonberg is entitled to "an injunction requiring the actual removal of barriers that prevent meaningful access." (*Lonberg v. City of Riverside*, 571 F.3d at 852.)

**4.        There Is No Good Cause To Delay Trial of Phase III.**

The Ninth Circuit has declared that the objective of the Americans with Disabilities Act is to prohibit discrimination against the disabled by requiring public entities "to provide meaningful access" to its services and programs, including sidewalks. (*Lonberg,* at 851.) All Mr. Lonberg is asking for is the opportunity to present evidence that the City is discriminating against him by refusing to provide meaningful access. The fact is that California has required accessible sidewalks since 1968 and the ADA has required it since 1992. Yet here we are in 2010 with a case that is more than 12 years old and Mr. Lonberg cannot bring this important matter to a close. The tragic irony is that the City has successfully delayed its duty to provide meaningful access by persuading the prior District Court Judge to wait until a final decision is reached on whether the City must have a plan for access – a plan that the City then argues is irrelevant to determining whether meaningful access actually exists. (Exh. B at p. 14, citing *Ability Center of Greater Toledo v. City of Sandusky*, 385 F.3d 901 (6th Cir. 2004).)

The discrimination that Mr. Lonberg suffers is significant and ongoing. Both District Court judges previously assigned to this case outlined the seriousness of the situation in their Findings of Fact and Conclusions of Law. Among other things, these Judges have noted that "The City, over a period of years, has engaged in a pervasive pattern of violating Title II of the ADA and the regulations related thereto . . .." (See PACER Docket No. 345 at p. 12, ¶ 30) and that Mr. Lonberg "regularly encounters physical obstacles on those streets and sidewalks that make it difficult or impossible for him to traverse them." (PACER Docket No. 345 at p. 3, ¶ 6.) Likewise the Court found that "Plaintiff is being denied the ability to easily access a variety of government, commercial, and residential areas of the City, including the sidewalks themselves,

and thereby is denied the ability to become a self-reliant member of the community. This is precisely the type of discrimination that the ADA and California's accessibility access laws were designed to address." (PACER Docket No.: 450 at p. 11, ¶ 19.)

      For all of these reasons, Mr. Lonberg requests that the Court set a trial date for this matter at its earliest convenience. Mr. Lonberg would like to have the trial in late Spring or early Summer 2010 if that time is available to the Court.


Respectfully submitted,


/s/
Terry J. Kilpatrick
Attorney for Plaintiff


cc:    Neil Okazaki, service via CM/ECF
       Greg Hurley, service via CM/ECF
       Client